2012-16-86 FORRESTER ENVIRONMENTAL v. WHEELABRATOR Good morning, Your Honors. May it please the Court? The District Court should have granted Forrester's motion to remand because it lacked subject matter jurisdiction over the claims asserted in the well-pleaded complaint, which was the amended petition. The Supreme Court in the Christensen v. Colt case has set forth a three-level test to determine whether there is jurisdiction under 1338. Just to make sure we're all on the same page, I assume that the two of you are both familiar with the Supreme Court's more recent decision in Gunn v. Minton? No, I'm not. Okay, well, it was decided a couple of weeks ago. Are you familiar with it? I'm not. Oh, for two. Okay. Well, I guess I'm just going to have to... of a patent law question on which the issue of malpractice terms is not sufficient to create federal jurisdiction. Right, and that's consistent with prior cases relating to the fact that a jurisdiction doesn't exist with respect to state tort actions, for example. Well, it's not consistent with our prior decisions, which is held to the contrary in malpractice cases, but go ahead. I'm sorry I have to plead ignorance on that. That's all right. Help me to understand what's going on here. There seems to be this big fight about what was said to this Taiwanese company about U.S. patent claims. Why would anybody in Taiwan care? Wait, let me finish. Sorry. Whether something infringed a U.S. patent or not. My understanding, based upon the facts in the case, was that the licensing authority that licensed Koban, which is the company running the incinerator up there, for whatever reason wanted to go with the contractor to do the remediation who had a U.S. patent for the process, even though it was recognized that the U.S. patent was not applicable in Taiwan. Is it clear there was no patent in Taiwan? Well, there is now. Mr. Forster does have a patent in Taiwan covering the process that he used there, but he only had an application at this time. And so it's in a very odd situation, and there's not going to be any case law about this, I don't think. But basically we have foreign conduct, which is the remediation of ash using a process invented by Mr. Forster who used insoluble phosphates. And there can't be any patent rights created, substantial issues of patent law relating to that conduct because U.S. patent law doesn't extend extraterritorially. And so that's probably the main reason why jurisdiction can't be asserted here. The first issue is whether the claims assert a federal patent cause of action, which they don't, they're all state law. There are four state law causes of action, one for Consumer Protection Act violation, two for intentional interference, and one for misappropriation. None of them raise a patent law issue. So the next level is whether a substantial issue of patent law is created that requires a resolution in order to try these cases. And there was no such issue raised here because no one was asserting infringement or non-infringement because they couldn't because that's outside the scope of U.S. patent law. Forster had patents in the states covering his process, but he, as we said in the actual complaint, they weren't enforceable abroad. And they were only pleaded just to essentially provide substance for what he was doing over there. And Wheeler Brader, on the other side, never asserted infringement by Forster as to any of his conduct in Taiwan because he couldn't have done that, which I think is well understood by everybody. And then the third kind of Christensen v. Colt level of inquiry is if there is a substantial issue of patent law, which there really can't be because patent law doesn't extend to foreign conduct. But if there is one, is it necessary to resolution of the claims? And there are two reasons why even if there was a substantial issue of patent law, it is not necessary to resolution of the claims. The complaint alleged essentially two levels, two types of false statements, intentional false statements in connection with intentional interference. One of which was that the U.S. patent of Wheeler Brader covered the use of all phosphates. And second of which was that its process, which is called WESFIX, its method, its proprietary method, also covered the use of all phosphates. And the second statement is not a statement about patent law at all. It's a statement about what was covered by that WESFIX process. And that can be litigated and resolved without reference to any patents whatsoever so that there is no need to refer to any substantial issue of U.S. patent law in order for these accounts to be tried. But what's the cause of action based on the theory that there's a misdescription of what is covered by the WESFIX process? That's one of the misstatements. Why would anybody care about that as a misstatement? Well, the only reason I can think anyone would care is that the licensing agency in Taiwan that licensed Cobman did care. And why they cared? Cared about that? They wanted, for some reason, they wanted to have the contractor who was supplying the process in Taiwan have U.S. patent rights. That's a different question. Why would they care whether this was the WESFIX process or not? Is that only because of the patent? Yeah, because they had licensed WESFIX. They initially hired Wheelabrator to use WESFIX over there. And the WESFIX project product was involved, it really uses soluble phosphates, wet phosphates to treat ash. And there was a problem with odor and some other things like that and failing some tests. That's why they brought in Forrester who was actually the inventor of the WESFIX process and had since left Wheelabrator. And Forrester came up with this new method using dry, highly insoluble phosphates to treat the ash. Didn't require water. You just sprinkle the stuff on and it works. Satisfies the relevant test. And so Wheelabrator then turned around and said, well, that's within the scope of WESFIX. And therefore, under your existing agreement, you have to use WESFIX and you can't use Forrester. And so they just essentially started using the same process. And this is independent of the argument as to whether it is covered by the patent? Yes. Because the license is limited to and covers all of WESFIX, right? Right, the license covers WESFIX. So the representation that Forrester's process is within the scope of what was licensed as WESFIX is a distinct and separate false statement. Right. There is in the record a letter of March 17. Distinct from the patent. I think it's March 17, 2006. A letter in which their lawyer writes, Covenant says WESFIX is defined to include the use of any phosphate, which was not true. But that was a statement that was relied upon. So that's an independent basis of the intentional interference counts. And also there's another one. I actually didn't realize until I was reading the cases getting ready for this. I should have read the recent Supreme Court cases. But in any event, there are two cases. The Board of Regents of the University of Texas case and the HIF bio case, both listed in our brief, which address the question whether reference to patents is necessary in order to resolve the issues. Where the claims were, this was a situation where a Japanese scientist came over and worked with the University of Texas. And he surreptitiously filed a patent application that Nippon Telephone and Telegraph then had. In the meantime, the University of Texas got its own patent. And Nippon argued that it was within federal jurisdiction because you had to construe the U.S. patent to figure out whether what they did was incorrect under the state law causes of action that had been asserted against them by the University of Texas. And among those were the same types of claims here, misappropriation and intentional interference. And they argued you had to construe these claims after substantial issue of a patent law and therefore there was jurisdiction. This is in the University of Texas case, which also discusses a lot of the other case laws. So I think it's an important case for this decision. And the court said no because the claim of misappropriation formed an independent basis for determining whether there had been intentional interference. And exactly the same result happened in the HIF bio case. So in both of those cases, there was no necessity to refer to the patent law issues because the case could be proven based upon simply the argument of misappropriation, which has nothing to do with patent law necessarily. So in this case we have essentially numerous reasons why there can't be jurisdiction. The most important one being it's conduct outside the scope of the U.S. patent laws. And secondly, using the Christensen three-part test, each one of those tests is bumped. And there are two bases, at the minimum, where any patent law that was somehow raised is not necessary to resolution of the claim. The first of which being there are assertions that were relied on, false assertions about West's fix, their process. And the second being the argument or the account saying there had been misappropriation, which under those two cases satisfies the element of intentional interference for intentional misconduct. And the state law is about the same in each of these three cases. So there can't be any jurisdiction. It's basically what it boils down to. So we have some arguments in the alternative, essentially, that relate to errors the court made when he tried this statute of limitations case and threw it out on that basis. They're pretty well briefed. I think I've said everything I can relating to those in the briefs. Very briefly, the first argument is that there was no factual basis for him to decide that Forrester had actual knowledge of this letter of March 17, 2006, about West's fix, or about Wheel of Ray's assertion to Coburn that it owned the use of all phosphates under its patents. He assumed, without any evidence, that he learned about these at a meeting a few weeks later. I take it that there's no dispute between the parties as to the question, as a matter of New Hampshire law, that statute of limitations issues are for the court to decide, even factual questions quite apart from the fact finder. That's correct. And so the issue is whether Forrester knew or should have known of these statements to Wheel of Rader, by Wheel of Rader, to Coburn, made for purposes of interfering with his relationship with Coburn. And there was no evidence at all that he knew about these. Now, Wheel of Rader argues that the court discounted Forrester's testimony as being not credible, and the other guy who testified with him, but that's not really the issue. Even if you throw out Forrester's testimony completely, and that of Mr. Shee, the judges can't invent a fact. And there's no evidence at all that he actually saw this letter, and it's inconsistent with his later communications. It's also no evidence that he heard of Wheel of Rader's crank claims, that it owned everything. There had been previous disputes about the parties, that's for sure, but none of them raising this specific assertion by Wheel of Rader. And so we think that was a rushed judgment, essentially, on the part of the judge. The next issue is a hearsay issue as to whether a Coburn report establishing harm, we say, after June of 2007, which is another issue in the case, was improperly excluded as hearsay. I've briefed all the cases, and in our view, all those cases support its treatment as a business record. Let's hear from the other side, and we'll save you a couple of minutes for rebuttal. Mr. Green, if it might be helpful if you started, apparently you are familiar with the Gunn decision of the Supreme Court? The recent one mentioned? Yes. I'm not. I was familiar with this court's decision in the Aiken-Gunn case, and I know there was another one where apparently the Supreme Court has now disagreed, but I haven't had an opportunity to become aware of or read those, so I apologize for that. We'll hear the argument. I think supplemental briefing might be helpful from both of you on that question. Thank you, Your Honor. I'd like to take advantage of that opportunity. Plainly, there are classes of cases where state law claims are articulated that have some patent issue, I think, to use a phrase this Court has used, in the air, that don't necessarily require resolution of a substantial question. But I think the issue before the jurisdictional issue before this Court is narrow enough that we don't have to consider, and until I read the Supreme Court's decision, I may end up having a different view, but we don't have to consider those other classes. The issue before this Court is when a plaintiff alleges that a defendant has made a false statement about patent rights, whether or not that necessarily turns into a requirement that a substantial question of patent law needs to be resolved. And the reason is, I think as articulated by this Court in both the dominant semiconductors and Hunter-Douglas cases, which are briefed in my brief, is that there is a strong federal policy that a patent, in fact, it preempts, it's a preemptive policy, that's how strong it is, that a patent holder has an absolute right to publicize his or her patents as long as the statements made are not objectively baseless, those are protected by federal law. It preempts a defense, it's not part of the cause of action. And the reason is it does necessarily turn on federal law because the truth or falsity of the statement about the patent requires, in something like a Markman hearing or something along those lines, it may not be a claims construction issue, it may be a validity issue or an enforceability issue, or something about the patent is alleged to have been said that is false. And the trial court necessarily delves into what is, I think, historically and preemptively the province of the federal courts to delve into… These statements were made in Taiwan. Well, actually, it's been a bit of a moving target. The amended petition, which is the one we look at for removal purposes, alleges that the statements were made in New Hampshire. I know the reply brief says, unequivocally, the conduct occurred in Taiwan. That's a direct quote. The method was practiced in Taiwan, the alleged method, although there is no proof, actually, of what was done in Taiwan or not. But the statement as pleaded occurred in June of 2007 in New Hampshire. I suppose it did occur in New Hampshire. It's a statement about activity that's occurring entirely abroad, right? Well, it's difficult to parse because the plaintiff said that the Taiwanese… This is the allegation. I think counsel indicated somehow it was factual, but it's merely an allegation at this point. Somehow the Taiwanese company needed to know who had the U.S. patent rights. They sent someone over to New Hampshire to talk to my client located in New Hampshire, and at that point, my client is alleged to have said, we guarantee that we have the patent rights. And then in paragraph 49 of the amended petition, it's alleged that that was material, and in reliance on that statement, the Taiwanese decided to no longer do business with the plaintiff. Why is it the business of the federal courts to determine whether a statement about activity occurring in Taiwan with respect to a U.S. patent which has no coverage in Taiwan is true or false? Why is that the business of the federal courts? I think it's the business of the federal courts to avoid a kind of crazy quilt of state decisions applying federal patent law about the truth or falsity. So that's the issue. It's not whether or not the Taiwanese did or did not rely on it. I agree that, in fact, I don't know that those are even the subject of state courts. At one point, we had a lively discussion with Judge LaPlante about whether this case belonged in Taiwan. But where the plaintiff relies on the allegation that a false statement was made by a U.S. patent holder about his U.S. patent rights, I would submit that the federal policy protects, even if it's made to a Taiwanese company or some other foreign company, where the practice itself is not subject to the protection of U.S. patent law. The fact that the statement is made by a U.S. patent holder about a U.S. patent and is then being challenged as false does, I would submit under Hunter Douglas and Dominant, does invoke that federal jurisdiction necessarily. Suppose that the patent had expired, but the Taiwanese, for reasons sufficient to themselves, decided they wanted to make sure that the people whom they were buying the product from were actually the two inventors and therefore had been the ones whose patent originally had covered that process. Would you then say still that the case belongs in federal court if the allegation is made that you told the Taiwanese that you were the actual inventors of the process and it was within the scope of the now expired patent? I think that's a more difficult case for the defendant because the law and the policy I'm resting on refers to the patent holder. And under your Honor's hypothetical, I'm no longer the patent holder, so I no longer enjoy that right to publicize. But in order to decide the question of whether your statement was true or false, a court would presumably have to explore the issue of the breadth of the patent, correct? Well, under your hypothetical, it would be a fairly simple patent law question that I don't think invokes the same... No, it would be just as complicated. The question is, were you the original inventor of this process? Why is that any more simple than the question of whether you were the inventor of a still valid patent? Yeah, no, I think inventorship is a difficult question. It's not just inventorship, it's the scope of the patent as it was when it was in effect. I think an argument would be made that the defendant would have the right to invoke federal jurisdiction because all of those issues are federal issues, and do we want the state courts deciding scope of patents, claims construction, obviousness, inequitable conduct before the patent office? Well, there I think you'll find the gun case will not be to your liking. I was afraid of that, but... What guns suggest is that there may be situations in which an issue of patent law will create federal jurisdiction even though it's not a federal cause of action, but what it says about the malpractice thing is that this is backward looking. It doesn't create a potential for conflict between the state and federal courts as to whether the activity is covered or not covered by a U.S. patent. That seems to be the situation here also. There's not going to be a U.S. infringement case which is going to determine whether undertaking this process in Taiwan is an infringement of the U.S. patent or not. There's no potential for conflict between state determinations and federal determinations. I would actually respectfully disagree, Your Honor. Suppose we remained in state court and the state court made a decision and adopted Mr. Forrester's view that he invented a chemical, which is what he said in his petition, or later on, as he says in his brief, that he invented a method and a chemistry, all of which is in sharp dispute at this moment. But suppose we had proceeded to the merits in state court. The state judge said, I'm deciding that claims construction, solubility means this, insolubility means that, infringement means this, infringement means that. This method is within the scope of the patent, etc. Then, since some of these patents are still within their term, we use the same method except we license it here in the United States. We get sued by Mr. Forrester for infringement. Is that state court decision in New Hampshire res judicata, or not res judicata, but issue preclusion collateral estoppel in case number two for infringement? Because he's convinced a state judge. So I think there is a sharp potential in these facts. I understand what you're saying, but that depends on some hypothetical assumptions. This Taiwanese company is performing this process abroad. There can't be any infringement suit against this Taiwanese company for infringing the U.S. patent. Some are hypothetical as well. If somebody else were performing the same process in the United States, there might be a conflict. That seems like an awfully hypothetical situation that may be not sufficient for federal jurisdiction. No, the complaint alleges that both parties remain engaged in the business of licensing these technologies to third parties. So this is an ongoing. These technologies can be used wherever there is municipal waste incineration. And in fact, the license, or not the license, it was a chemical supply contract that Mr. Forrester entered into, granted the Taiwanese company the right to practice the method or purchase these chemicals and resell them throughout the world. In fact, I asked Mr. Forrester that in his deposition. That was his interpretation of it. So there is a real problem, unlike a malpractice case, which presumably is failing to draw up claims properly. I don't know what the facts of gun were. But something along those lines, that's not going to create the same kind of conflict. I think that the sharp policy at issue here is a narrower one. It doesn't necessarily involve other types of state torts, but it involves these business disparagement torts that this court has found in additive controls, Hunter-Douglas and Dominant, to be necessarily invocative, if that's the word, of federal jurisdiction. The Supreme Court in Gun, again, this is kind of unfair. I've got it in front of me and you don't, but just for purposes of your future consideration of the issue, you might look at page 11 of Gun, in which the court addresses the issue preclusion question and says, but even assuming that a state court's case within a case adjudication may be preclusive under some circumstances, the result would be limited to the parties and patents that have been before the state court, such fact-bound and situation-specific effects are not sufficient to establish federal arising under jurisdiction. So they explicitly deal with, at least in that context, the preclusive effect argument that you were making a moment ago. Well, of course, in my hypothetical, we are concerned with the same parties. Right, which is what the Supreme Court was saying isn't enough. Oh, it is not enough. I'm sorry, I misunderstood. I'll certainly have to read that and avail myself of the supplemental briefing, if I may. I want to address briefly counsel's point that somehow they pleaded alternative theories within the meaning of Christian sin, because in my reading of the amended petition, that's plainly not the case. There is a statement using the conjunctive and that says we lied about whether insoluble chemicals, and I'm paraphrasing, I apologize, insoluble chemicals were covered by our patents and covered by the Westfix license. So it's not, there's no, as Judge LaPlante said in his oral order on remand, there's no way to slice and dice it. They didn't say, and it's not possible to tell that one misrepresentation was made one day, and the next day another misrepresentation was made. The way the complaint or amended petition is drafted, it's all one statement. And so this is an after-the-fact attempt to rewrite the allegation as if there were separate misrep, or alleged separate misrepresentations. In fact, the way the amended complaint reads is that Westfix is used interchangeably with the scope of the patents that underlie the technology. So it's not a model of clarity, but I think the fair reading of it is that there is not an alternative theory. There is one theory, and that is that the Taiwanese were concerned about who owned the U.S. patent rights. The patent holder allegedly made a false statement about it, and as a result, this court, or not this court rather, but the trial court needs to go through the analysis set forth in dominant semiconductors. Was that statement objectively baseless within the meaning of, or under the doctrine that a patent holder has the right to make statements about his or her patent rights as long as those statements are not objectively baseless? I have about six seconds, but my green light is still on, so if I may continue briefly on the statute of limitations point. Okay. Two minutes. Thank you, Your Honor. The record could not be more clear that the plaintiff was aware of an ongoing dispute with my client about the scope of patents. There are letters in 2004, there are letters in 2005, there are letters in 2006. There was not just one letter on March 17, 2006. In February 2006, Kobin, the Taiwanese company, wrote to Mr. Forrester and said, we are very concerned about whether your process infringes the U.S. patents, and I agree, Judge Dyke, why the Taiwanese company would be very concerned about that remains a mystery to this day, frankly, but they were, apparently, according to this letter, and they said to Mr. Forrester, will we infringe if we use your technology? Will we infringe the wheel of greater patent? And he wrote back the same day through his agent, Mr. Shi, saying, no, they're two completely different technologies. And a month later, they met, and the notes, the only surviving notes of the meeting, say patent differences were discussed, and it was based on that specific evidence coupled with the fact that he believed Mr. Forrester and his other witnesses may have fabricated their testimony, coupled with a nine-year history of disputes about the scope of these very same patents that led him to conclude that it was more likely than not that at that March meeting, despite Mr. Forrester's denial, they did indeed discuss the conflict between the two patents, and in any event, those inferences were well within the judge's discretion to draw, and the failure of Mr. Forrester to come forward with credible testimony also amounts to a failure of his burden of proof. So my time is up, and I thank you. Okay, thank you. Mr. Burrow? Mr. Ruppert? Thank you very much. The cases that my brother just cited, Hunter Douglas and Dominant and Additive Controls, all involve cases where there have been allegations of infringement or non-infringement, and related to situations where U.S. patent rights were actually applicable like suits in the United States, and so they're totally distinguishable from this factual situation. Most of these arise in a case where there's a license agreement and there's some issue about whether it's primarily a case under the license agreement, breach of contract, or for patent infringement, and that's the situation where they look to the remedy claimed to determine whether it primarily sounds in patent or in contract. And those are that line of cases, all of which involve assertions of substantial issues of patent law in the cases that have to be resolved. So they're really not applicable to this rather oddball situation where the conduct is abroad and there can be no patent rights relating to conduct which is abroad because the law doesn't extend that far. It's not true to say that every time there's a statement that the terms of a patent have to be construed, that automatically provides a basis for jurisdiction. The University of Texas case is a counterexample. The Board of Regents at the University of Texas where the argument was specifically made by the Nippon Company and it was rejected on the grounds that it wasn't necessary to a resolution of the case because of the fact that the state law cause of action for misappropriation provided the basis for the determination as to whether there had been intentional interference as alleged. So it's not true under this court's case law that every time the issue of a patent infringement comes up there's automatically jurisdiction. Do you think that if the case were remanded to the New Hampshire State Court and the New Hampshire State Court were to rule, well, really either way on the scope of the patent that that would be issued preclusion as to the losing party on that issue? Not necessarily. Subsequent proceedings? What would be the argument as to why it isn't? Well, it depends on how they did it. Assume that the two of you are... It may be that the case may be, it could be sent to the jury also because there's no obligation for a Markman-type hearing in state court and there may not be a judicial determination relating to whether or not there was... Well, if the jury returns a verdict, that's just as good a solid basis for applying preclusion. My question is why wouldn't preclusion be applicable in that setting? Well, because this has to do with an assertion... There's no assertion of infringement being resolved. The question is whether the statement made relating to conduct in Taiwan was true or not. Right, and if the conclusion of the jury... The jury, let's say, suppose, or the judge has instructed or concludes that the patent, let's say, does cover this conduct and then you go and sell the product to somebody in Concord and they sue you for patent infringement, do you lose on issue of preclusion, period, end of case? Because this has already been adjudicated in the New Hampshire state courts. I think I have to read the Supreme Court case before I can answer that. Well, maybe. But under normal issue preclusion principles, presumably you would, right? Potentially, yes. When would you like your supplemental brief? All right. We've completed the argument. I think if both of you would write to the court... Is a week long enough? Let's say a week for tomorrow. It's quite a straightforward case. It concerns the issues here. If we say by the close of business a week from tomorrow, April 10th, and a few pages ought to do it. The case is Gunn, G-U-N-N, against Minton. And I have the Supreme Court site. It's 133 Supreme Court 1059. And it was just a couple of weeks ago. Thank you, Your Honor. So that you could write no more than, let's say, three pages. A little more. If you find that it's important, it is relevant. And so we'll be interested in what you have to say. Thank you, Your Honor. Okay. Anything else? Any more questions for anybody? Okay. Thank you both. The case is taken under submission. All right. Your Honor, the court adjourns until tomorrow morning at 12 o'clock.